589 A.2d 1057

JEFFREY P. SILVERMAN, PLAINTIFF–APPELLANT, v. ROGER KING, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 8, 1991—Decided May 2, 1991.

Before Judges J.H. COLEMAN and LANDAU.

*Mark Pfeffer* argued the cause for appellant (*Goldenberg, Mackler & Sayegh,* attorneys; *Mark Pfeffer* on the brief).

*Joseph A. Fusco* argued the cause for respondent (*Ribis, Graham & Curtin,* attorneys; *Joseph A. Fusco* of counsel and on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal from dismissal of a claim for punitive damages made in conjunction with the complaint of plaintiff-appellant Jeffrey P. Silverman against defendant-respondent Roger King for damages arising out of a unique assault upon Silverman in an Atlantic City casino on April 15, 1987.

Silverman was the house dealer at a high stakes baccarat table. King had placed $22,500 in bets on the hand being played, and as the highest bettor was given "courtesy" to look at the "player" hand after it was dealt. When he exercised this right, Silverman "faced" the cards and "called" a "natural eight," a hand which made it very likely that King would win a $20,000 bet. King, a large man, jubilantly rose, went behind Silverman then still engaged in "facing" and "calling" the cards for the table, and threw his right arm around Silverman's neck

and upper chest, lifting him off the floor. Silverman testified that King "lifted me off the ground by my throat and held me there with great force" for almost twenty seconds from initial contact to release. King's companion said, "Let him go" and pulled his arm from Silverman.

Silverman continued the deal, and despite discomfort, completed his shift. King told him he was only "joking around," inquired if he was "okay," and continued to play at Silverman's table.

Unfortunately, Silverman's body build and abnormal chest wall configuration rendered him particularly vulnerable to this strenuous physical embrace, well-intentioned or not. Not long after, Silverman developed symptoms of a condition diagnosed as thoracic outlet syndrome, which the jury in this case determined to have been proximately caused by the April 15 incident. That finding and the $66,000 compensatory damage award have not been challenged on appeal.

The sole issue before us is whether the essentially undisputed evidence, together with all legitimate inferences therefrom, could sustain a judgment arising from conduct which was malicious, wanton, willful or sufficiently egregious to warrant punitive damages. The trial judge granted King's motion for involuntary dismissal, reasoning that:

> There is none of the malice, wantonness, willful, malicious, aggregious [sic] conduct that is required when you have punitive damages to lift the case in the area of negligence to this higher level of willful, wanton, malicious, aggregious [sic] conduct.
>
> The man had just won $20,000 on the turn of two cards. He jumps up exuberant, as was described by the plaintiff's own witnesses, and runs over and grabs the dealer who had just dealt this $20,000 winning hand. That's all it was. There was no intention to do anything.
>
> There was no malice. There was no willful, wanton disregard of the rights of others. There was no aggregious [sic] conduct.

We affirm substantially for the reasons expressed by the trial judge. We add our recognition that all unintended consequences of intentional but non-malicious acts are not exempt from exposure to punitive damages. For example, no

matter how good-natured its purpose, a pilot's congenial aerial buzzing of his neighbor's house clearly carries with it enough prospect of danger to warrant a trial judge to submit the question of outrageous and egregious conduct to a jury for possible assessment of punitive damages. There must be, in other words, foreseeability of unintended harmful consequences of a friendly, but intentional touching before it warrants the deterrent of punishment in addition to compensatory damages. *See Mahoney v. Carus Chemical Co., Inc.*, 102 *N.J.* 564, 574–75, 510 *A.*2d 4 (1986); *Berg v. Reaction Motors Div.*, 37 *N.J.* 396, 413–14, 181 *A.*2d 487 (1962); *Edwards v. Our Lady of Lourdes Hosp.*, 217 *N.J.Super.* 448, 462, 526 *A.*2d 242 (App.Div. 1987). We note that these authorities are consistent with the legislative standards for punitive damages established in the recently enacted New Jersey products liability statute.[1] *See also* Prosser and Keeton, *The Law of Torts* § 34, at 213–14 (5th ed. 1984).

■ Here, there was uncontradicted expert testimony that the kind of "hug" given by King would not be expected to cause injury to one not afflicted with a congenital predisposing skeletal condition such as Silverman's.

Every intentional tort carries with it a potential for the charge of conduct warranting punitive damages. The mere assertion of a request for punitive damages in an intentional tort case, however, does not create an absolute right to have that request placed before the jury. The trial court had a duty under *R.* 4:37–2(b) to scan the evidence to ascertain whether it presented a factual basis for a reasonable jury to conclude that the factors warranting punitive damages were present.

---

[1] *N.J.S.A.* 2A:58C–5 provides in part:

"[A]ctual malice" means an intentional wrongdoing in the sense of an evil-minded act, and "wanton and willful disregard" means a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such action or omission.

Here, while intentional conduct and even recklessness might have been demonstrated, the record did not show that King's conduct was such as would ordinarily be expected to present a danger beyond fleeting discomfort to a normal person. This was the kind of well-intentioned physical exuberance commonly seen at every athletic contest, both in the stands and on the field. While parties injured thereby should not suffer without recompense, punitive deterrents are not warranted where the conduct is neither mean-spirited nor so heedless of the likelihood of harm as to be deemed wanton. Here, the trial judge properly recognized that the extremely unlikely result of King's intentional but not predictably dangerous conduct could not as a matter of law render that conduct sufficiently outrageous or egregious to warrant punitive damages.

Affirmed.